ESTATE OF CLAUDE E. BRIMM, DECEASED, DELORES E. BRIMM, SPECIAL ADMINISTRATOR AND DELORES E. BRIMM, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

BLESSED RELIGIOUS INSTITUTE OF MERCENARY MISSIONARIES, A CORPORATION SOLE, ACTING FOR AND ON BEHALF OF THE FIRST CHURCH OF GOD THE FATHER, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 5053–71, 9095–74. Filed April 6, 1978.

---

Delores E. Brimm, pro se in docket No. 5053–71.
*James Jess*, for the petitioner in docket No. 9095–74.
*Kenneth G. Gordon*, for the respondent.

WILBUR, *Judge:* These cases were consolidated for trial, briefing, and opinion. They are presently before the Court pursuant to an agreement of the parties and order of the Court to sever for purposes of trial, briefing, and opinion the issues considered herein. A hearing concerning these issues was held in Los Angeles, Calif., on April 18, 1977. Simultaneous briefs were thereafter filed by the parties.

The individual petitioners in docket No. 5053–71 allege that procedural irregularities invalidate the statutory notice determining deficiencies against them for the calendar years 1966 and 1967, and that for this reason we lack jurisdiction over the controversy. The petitioner in docket No. 9095–74 (hereafter the corporation) alleges that procedural irregularities invalidate respondent's retroactive revocation of its status as an organization described in section 501(c)(3)[1] and exempt from Federal income tax under section 501(a). It is the position of the petitioners that neither the statutory notice of deficiency nor the retroactive revocation letter was signed by the appropriate individuals nor in accordance with procedures specified in the appropriate delegation orders.

## FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of facts, a supplemental stipulation of facts, and accompanying exhibits are incorporated herein and are found accordingly. Only

---

[1] All section references herein are to the Internal Revenue Code of 1954, as amended and in effect during the taxable year in question, unless otherwise specified.

those facts necessary to an understanding of the issues presently before the Court will be reported here.

*Facts re Issue 1—The Statutory Notice of Deficiency*

Respondent on April 14, 1971, issued and mailed a statutory notice of deficiency to Claude E. Brimm and Delores E. Brimm with respect to the calendar years 1966 and 1967. This notice was issued by the Office of the District Director of Internal Revenue, Los Angeles, Calif., and contained the following closing:

> Sincerely yours,
> Randolph W. Thrower
> Commissioner
> By
> (S) F. S. Schmidt
> *District Director*

The name "F. S. Schmidt" was handwritten, while the rest of the closing was printed.

The District Director of Internal Revenue for Los Angeles, Calif., on April 14, 1971, was F. S. Schmidt. Although the name F. S. Schmidt appears in writing at the close of the notice of deficiency mailed to petitioners, Mr. Schmidt did not sign this notice of deficiency. Rather, the name of the District Director was written by Alvarez L. LeCesne who was the Chief, Notices Section, of the Audit Division of the Office of the District Director for Los Angeles at the time of such writing. The petition herein, docket No. 5053–71, was timely filed on July 12, 1971.

At the time Mr. LeCesne signed the District Director's name to the notice of deficiency, Delegation Order No. LA–41 (Rev. 4) (effective December 1, 1970) provided in part:

Through the authority placed in me as District Director and in accordance with Delegation Order No. 77 (Revision 3) effective October 20, 1969, the incumbents of and persons acting in the positions listed below are authorized to sign the name of the District Director and send to the taxpayer by registered or certified mail any statutory notice of deficiency:

*Field and Office Audit Cases*
Chief, Review Staff
Chief, Conference Staff
Revenue Agents (Reviewers or Conferees) not lower than GS–11
Chief, Conference Sections A and B

Chief, Notices Section
Revenue Agent (Statutory Notice Writer GS–12)

*Facts re Issue 2—The Exemption Revocation Letter*

The petitioner corporation in docket No. 9095–74, was informed in a letter (a 30-day letter) from the District Director of Internal Revenue for Los Angeles, dated April 7, 1969, that an examining officer had recommended retroactive revocation of a determination letter dated May 16, 1967, granting the corporation exemption from Federal income tax.[2] The basis for this recommendation was that the corporation was not organized and operated exclusively for religious purposes. This 30-day letter described the administrative remedies available to the corporation should it desire to protest this recommendation. The administrative remedies include a district conference and possible consideration by the National Office. See 26 C.F.R., Statement of Procedural Rules, sec. 601.201(n)(6)(ii), (iii). In this case, the corporation availed itself of the various administrative remedies.

On November 28, 1972, the corporation was advised in a letter from the District Director for Los Angeles that the proposed revocation of its exempt status made on April 7, 1969, was final, and that the letter dated May 16, 1967, granting an exemption to the corporation had been revoked. This letter was signed "F. S. Schmidt" and contained the printed designation of "District Director." The District Director's name was written by Leslie A. Clark, who was employed by the Internal Revenue Service as a Program Manager (GS–14), Audit Division, Office of the District Director, Los Angeles, Calif., at the time. The initiator of this final letter of revocation was a Mr. R. A. Kolker.

On November 28, 1972, Johnnie Robertson was the Chief of the Audit Division for the Los Angeles District of Internal Revenue, but was absent from the Los Angeles office on that day. At a staff meeting shortly before November 28, 1972, Robertson orally designated Leslie A. Clark to be the Acting Chief, Audit Division, in Robertson's absence. The District Director was, in turn, orally notified by Robertson of this designation, and did not request such designation to be made in

---

[2]The May 16, 1967, determination letter was modified slightly by the issuance of a second determination letter on June 14, 1967. The modification is in no way material to the issue presented herein.

writing. It was in his capacity as Acting Chief of Audit that Leslie A. Clark affixed the name of the District Director to the letter of final revocation.[3]

On August 22, 1974, respondent mailed a statutory notice of deficiency to the corporation with respect to its taxable year ending December 31, 1967. Petitioner in docket No. 9095–74 timely filed a petition on November 21, 1974.

## OPINION

Petitioners attack the manner in which the deficiency notice and the letter retroactively revoking exempt status were issued, arguing that procedural irregularities invalidate the deficiency notice sent the individual taxpayers and the revocation letter sent to the corporation.

The narrow issue that we address is whether or not the individual who signed the District Director's name to the deficiency notice and revocation letter was authorized to do so by an appropriate delegation of authority. Section 6212(a) provides:

SEC. 6212. NOTICE OF DEFICIENCY.

(a) IN GENERAL.—If the secretary *or his delegate* determines that there is a deficiency in respect of any tax imposed by Subtitle A or B, he is authorized to send notice of such deficiency to the taxpayer by registered mail. [Emphasis supplied.]

The Secretary of the Treasury, through the combination of sections 301.7701–9 and 301.6212–1(a), Proced. & Admin. Regs., has extended the authority to determine deficiencies and to issue notices of deficiency to the Commissioner of Internal Revenue and to the District Directors of Internal Revenue. These delegations also give the Commissioner the authority to redelegate the performance of such functions to other officers or employees under his supervision and control, including the authority to authorize further delegation of such authority by his delegates. See sec. 301.7701–9(c), Proced. & Admin. Regs. Pursuant to the above grants of authority, the Commissioner delegated to various officials the authority to sign, and to mail to taxpayers, statutory notices of deficiency. In addition, the

---

[3]The copy of the revocation letter sent to the taxpayer contains only the name F.S. Schmidt in writing, without indicating who affixed the signature. The file copy retained by the Service has a series of boxes at the bottom indicating the employees performing initiating and review functions and the date these functions were performed.

Commissioner authorized the redelegation of these functions by District Directors to various other officials. See Delegation Order No. 77 (Rev. 4), 1971-1 C.B. 656 (effective November 23, 1970). The District Director for Los Angeles, acting through his authority as District Director and in accordance with Delegation Order No. 77 (Rev. 3) (effective October 20, 1969), authorized the Chief of the Notices Section of the Audit Division for Los Angeles, among others, "to sign the name of the District Director and send to the taxpayer * * * any statutory notice of deficiency." See Delegation Order No. LA-41 (Rev. 4) (effective December 1, 1970).[4]

We conclude that the statutory notice of deficiency issued to the Brimms in the present case was issued pursuant to the proper authority. On April 14, 1971, the date the notice was issued, Mr. Alvarez L. LeCesne was the Chief, Notices Section, Audit Division, Los Angeles District. The incumbent of that position was authorized by delegation of authority to sign the District Director's name to a statutory notice of deficiency. Mr. LeCesne, therefore, did have the authority to sign the statutory notice of deficiency. Moreover, on the basis of the evidence before the Court, we are convinced that the signature appearing on the notice clearly indicates that Mr. LeCesne signed the notice in question.

We next consider the validity of the letter revoking the corporate petitioner's tax exemption. The corporation maintains that its exemption was revoked by Leslie Clark, and that Clark was acting without properly delegated authority when he issued the revocation letter. Consequently, the letter of revocation is invalid and the determination letter granting exemption has not been revoked. The alleged defect in delegation is the oral appointment by Johnnie Robertson, Chief of the Audit Division for the Los Angeles Office, of Leslie Clark to be the Acting Chief during Robertson's temporary absence on November 28, 1972.

It is the petitioner's contention that only a District Director may appoint an Acting Chief of Audit, and that a Chief of Audit

---

[4]The effective date of Order No. LA-41 (Rev. 4) was Dec. 1, 1970. Delegation Order No. 77 (Rev. 3) was superseded by Delegation Order No. 77 (Rev. 4), having an effective date of Nov. 23, 1970. While Order No. LA-41 should more appropriately have referred to Delegation Order No. 77 (*Rev. 4*) (issued 8 days earlier) rather than superseded Delegation Order No. 77 (*Rev. 3*), it is clear that the authority provided was continuous and the parties do not base their case to any extent on this minute clerical error.

may not delegate the authority to revoke exemption letters as was allegedly done in this case. The petitioner's argument, however, fails to recognize a distinction between the delegation of authority and a mere designation. When Clark issued the revocation letter regarding petitioner's status as an exempt organization on November 28, 1972, he acted in the capacity of the Chief of Audit, pursuant to a designation of authority by the incumbent of that office, Robertson. Under the designation, Clark assumed the full authority vested in or delegated to the position of the Chief of Audit, including the authority to issue exemption revocation letters.[5] Therefore, Clark acted as Robertson's designate and Clark's actions were proper and authorized. See *Wessel v. Commissioner*, 65 T.C. 273, 276 (1975).

Petitioners also argue that Mr. LeCesne and Mr. Clark could only sign their own name to the deficiency notice and revocation letter, and not the name of the District Director. We disagree. The procedure generally followed is to sign the District Director's name rather than the name of the subordinate official acting on his behalf, probably in order to issue the notice or revocation letter in the name of the District Director of the office involved.[6] However, this in no way impairs the legal efficacy of these documents. It is clear that the individuals acting on behalf of the District Director were properly authorized to do so and that they signed the District Director's name to the notice and revocation letter. Petitioners received the documents, were fully apprised of the deficiencies determined, and timely filed petitions with this Court. That is all that is required. As we stated in *Perlmutter v. Commissioner*, 44 T.C. 382 (1965):

It is axiomatic that the intent and purpose of the statutory requirement for

---

[5]Petitioner concedes that Robertson, as Chief of Audit, had the authority to revoke an exemption letter. Moreover, under Internal Revenue Service internal procedures in effect on the date in question, all supervisors and their superiors (with certain exceptions not relevant here) were delegated the authority to designate an employee to serve as an acting supervisor during the supervisor's absence. See Delegation Order No. 12 (Rev. 5), 37 Fed. Reg. 9677 (1972) (effective May 10, 1972).

Another indication of the propriety of the actions of Clark as Acting Chief of Audit is contained in the Delegation of Authority, Delegation Order No. LA-121 (Rev. 1), entitled Authority to Issue Determination Letters Relating to Exempt Organization Matters, issued by the District Director for Los Angeles, providing in part that "effective November 21, 1970, the incumbent of *or person acting* in the position [of Chief, Audit Division] is authorized to issue revocation of determination letters." (Emphasis added.)

[6]While respondent's internal control sheets indicate the officials who acted on the District Director's behalf, this is not apparent to one receiving the notice of deficiency or revocation letter.

the issuance of deficiency notices is to inform the taxpayer that the Commissioner means to assess additional taxes against him, and to provide time for the taxpayer to petition this Court for a redetermination if he is so advised. Here the taxpayers knew, and indeed admitted, that the respondent meant to assess deficiencies in income taxes against them; they received the notices issued in respondent's name and promptly invoked our jurisdiction to redetermine the deficiencies in question. To paraphrase the language of Judge Learned Hand in *Olsen v. Helvering*, 88 F.2d 650, 651 (C.A. 2, 1937), affirming a Memorandum Opinion of this Court, their petitions here made it perfectly plain that they were not misled and enjoyed every privilege which a notice formally correct and issued * * * would have given them. This being true, we are unwilling to construe even a tax statute in the archaic spirit necessary to defeat these levies; the notices are only to advise the person who is to pay the deficiency that the Commissioner means to assess him; anything that does this unequivocally is good enough. [44 T.C. at 400. See also *Wessel v. Commissioner*, 65 T.C. 273, 277 (1975); *Sanderling, Inc. v. Commissioner*, 571 F.2d 174 (3d Cir. 1978), affg. in part and revg. in part 66 T.C. 743 (1976).]

We have narrowly confined our inquiry to determining that the stipulated orders authorize the action taken on respondent's behalf by the employees involved. Petitioners urge us to consider these questions in a far broader context. They argue that a more senior official should have made the judgments involved; and that in any event, the principal judgments concerning the revocation letter were made by an inferior official (the initiator, Mr. Kolker) and simply ratified by Mr. Clark in a perfunctory manner. We flatly reject petitioners' invitation. In doing so, it may help to reemphasize the hornbook law applicable to our inquiry. Our focus is on the correctness of the deficiency determined in the statutory notice. Except in very limited circumstances involving allegations of extraordinary misconduct, this Court has consistently refused to look behind a deficiency notice to examine respondent's motives for the administrative policy or procedure involved in making the determinations. See *Greenberg's Express, Inc. v. Commissioner*, 62 T.C. 324, 327–329 (1974); *Human Engineering Institute v. Commissioner*, 61 T.C. 61, 66 (1973); *Suarez v. Commissioner*, 58 T.C. 792, 814 (1972).[7] When a deficiency turns on the validity of a retroactive revocation of exempt status, we see no reason why

---

[7] Even in those rare and exceptional circumstances in which the conduct of respondent has been subject to judicial scrutiny, the notice of deficiency has not been declared null and void. See *Suarez v. Commissioner*, 58 T.C. 792, 814 (1972). See also *United States v. Janis*, 428 U.S. 433 (1976).

allegations of similar procedural irregularities in issuing the revocation letter should be treated differently.[8]

The amount of time the appropriate official spent evaluating the case, his prior experience, his educational background, his reputation for thoroughness, his workload at the time he acted, the general nature of his health, the extent to which he relied on subordinates, the extent to which review functions were performed in a perfunctory manner, and similar facts are simply irrelevant. Neither are we interested in various instances of discord or animosity that divided the parties prior to their arrival in this Court and the fruitless and fractious "who shot John" inquiries such disharmony often invites. When we are receiving a thousand new petitions a month, often presenting factually complicated issues under an increasingly abstruse law, digressions of this nature are wholly incompatible with judicial economics.[9]

The petitioner has the burden of proving facts that under the applicable law require a different result than the one proposed in the deficiency notice. This is the focus of our inquiry and we are long past the time when that issue should have been decided in this case. The petition herein was filed in 1971, in the case of the individual petitioners, and in 1974 in the case of the corporate petitioner. The years involved extend back over more than a decade.

Protracted wrangling, petty haggling, procedural nitpicking, and mountains of interrogatories in this Court and in a closely related case in the District Court have been the main features of this saga over more than half a decade. Attorneys on *both* sides have insisted on punctilious adherence to the procedural niceties. As a result of delay, records may be lost, memories fade, and witnesses become unavailable. Indeed, one of the individual petitioners, and the moving force behind the corporate petitioner has died. The entire episode calls to mind Dickens' comments in Bleak House about *Jarndyce v. Jarndyce:*

Jarndyce and Jarndyce drones on. This scarecrow of a suit has, in the course

---

[8]Petitioners also allege that in addition to the mechanical errors of procedure herein considered, respondent abused his discretion in giving the revocation retroactive effect. This issue was not severed and remains for consideration at the trial of this case.

[9]The Court has adequate authority to deal with a flagrant failure to proceed properly. See Rule 123 of the Court's Rules of Practice and Procedure. It should be clear that the Court will use this authority when it is warranted. See *Freedson v. Commissioner*, 67 T.C. 931 (1977); affd. 565 F.2d 954 (5th Cir. 1978).

of time, become so complicated that no man alive knows what it means * * * Innumerable children have been born into the cause * * * innumerable old people have died out of it. Scores of persons have deliriously found themselves made parties in Jarndyce and Jarndyce without knowing how or why; whole families have inherited legendary hatreds with the suit * * * There are not three Jarndyces left upon the earth, * * * but Jarndyce and Jarndyce still drags its dreary length before the court.

Petitioners' motions are denied. No further delay or digressions will be countenanced, nor motions granted to proceed out of time. The parties ignore this unequivocally clear admonition at their peril.

*Appropriate orders will be issued.*