JOSEPH J. IMHOFF and EDITH M. IMHOFF, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Imhoff v. Commissioner
Docket Nos. 6279-73, 4309-76.
United States Tax Court
T.C. Memo 1979-57; 1979 Tax Ct. Memo LEXIS 470; 38 T.C.M. (CCH) 230; T.C.M. (RIA) 79057; February 15, 1979, Filed Joseph J. Imhoff, pro se. Russell K. Stewart, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined deficiencies in petitioners' Federal income tax for the taxable years 1971 and 1972 in the amounts of $ 3,083.72 and $ 16,620, respectively. The cases were consolidated for trial, briefs and opinion. The issue for decision is allowability of expenditures claimed to be ordinary and necessary under section 212, Internal Revenue Code of 1954, [1] for the production or collection of income or for the management, conservation or maintenance of property held for the production of income and allowability of a deduction for "depletion dividend." *471 FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and attached exhibits are found as facts and incorporated by this reference. Petitioners are husband and wife and resided at Merion Station, Pennsylvania, when they filed their petition. They filed joint Federal income tax returns for the taxable years 1971 and 1972 with the District Director of Internal Revenue at Philadelphia, Pennsylvania. Petitioner Joseph J. Imhoff (herein Col. Imhoff) during 1971 and 1972 was a retired Army colonel. He served on General Douglas MacArthur's staff prior to 1950. His duties in the Army included those of an inspector general where he investigated government contracts involving billions of dollars to ascertain the adequacy and appropriateness of the expenditure of government funds and to see whether good business management was being applied. At the personal request of the Secretary of War he authored the "Armed Services Procurement Act" and the "General Services Procurement Act" which were enacted by Congress without a single dissenting vote. During 1971 and 1972 petitioners resided in a 17-room, 3-storied house. They held investments in corporate *472 stocks and bonds and real estate located in the Washington, D.C., metropolitan area. They maintained no office outside their personal residence in which to conduct their business affairs nor did they operate a trade or business from their personal residence. Their income-producing real estate was managed by a real estate firm located in Washington, D.C., which was paid fees for its services. On their income tax returns for the taxable years 1971 and 1972 petitioners claimed that 47.06 percent of their personal residence was utilized by them in connection with their investment activities. In his statutory notices of deficiency the Commissioner determined that petitioners utilized 5.78 percent of their personal residence in connection with their investment activities, based upon a memorandum opinion of this Court covering petitioners' income tax liabilities for the taxable years 1961, 1962 and 1963. Imhoff v. Commissioner,T.C. Memo 1970-221. Petitioners' business use of their personal residence in 1971 and 1972 did not exceed the 5.78 percent allowed by the Commissioner in his statutory notices of deficiency. On their income tax return for the taxable year 1971, *473 petitioners claimed the following deductions: Sales tax
$ 2,000
Automobile expense
900
Miscellaneous expenses
for Production and
Conservation of Income
7,375
In his statutory notice of deficiency covering the taxable year 1971, the Commissioner allowed the following portions of the deductions described above: Sales tax $ 346
Automobile expense
none
Miscellaneous expenses
for Production and
Conservation of Income
none
The Commissioner, in the statutory notice did, however, allow a deduction not claimed by petitioners on their return. It was for $ 1,217.61 representing 5.78 percent of petitioners' total expenses related to upkeep of property. On their income tax return for the taxable year 1972, petitioners claimed the following deductions: Sales tax
$ 2,059
Miscellaneous deductions
consisting of the following: Autos $ 960
Entertainment
475
Books & publications
875
Production & Conservation
of income
12,945
Investment
774
Legal
12,780
Organizations
575
Political Contributions
100
Miscellaneous
1,587
$ 31,071
In his statutory notice of deficiency covering the taxable year 1972, the Commissioner *474 disallowed petitioners' claimed deduction for sales tax of $ 2,059 and miscellaneous deductions to the extent of $ 29,046. ULTIMATE FINDING OF FACT Petitioners are not entitled to deductions in excess of those allowed by the Commissioner in his statutory notices of deficiency except as conceded by respondent. OPINION Petitioners, on brief, rely upon a single ground to defeat the deficiencies determined by the Commissioner. That ground is that the statutory notice of deficiency for the taxable year 1971 is invalid because the examining officer did not determine that all of the deductions were disallowed. Despite a ruling against petitioners prior to trial and our admonitions adnauseam during trial, petitioners, like a broken record, continue to press this argument to the exclusion of arguing the merits of the deductions they claimed on their income tax returns. We explained time and time again that the determination of the Commissioner of Internal Revenue which petitioners must disprove is contained in his statutory notice of deficiency and we will not look behind that notice. We continue to conclude that the rule is applicable here. The deductions were disallowed *475 for lack of substantiation and they are deductions that are commonly disallowed for that reason. "Except in very limited circumstances involving allegations of extraordinary misconduct, we have consistently refused to look behind a deficiency notice to examine respondent's procedures or policies used in making the determinations." Lane-Burslem v. Commissioner,70 T.C. 613, 622 (1978). "Except in very limited circumstances involving allegations of extraordinary misconduct, this Court has consistently refused to look behind a deficiency notice to examine respondent's motives for the administrative policy or procedure involved in making the determination." Estate of Brimm v. Commissioner,70 T.C. 15, 22 (1978); Greenberg's Express, Inc. v. Commissioner,62 T.C. 324, 327-329 (1974); Human Engineering Institute v. Commissioner,61 T.C. 61, 66 (1973). [2]
*476 We have not included in our findings of fact any fact involving the examination of petitioners' income tax returns prior to the mailing of the statutory notices of deficiency because they are all immaterial. The Court afforded petitioners a separate hearing in Washington, D.C., on petitioners' motion for production of documents at which time Col. Imhoff interrogated the revenue agent who examined petitioners' 1971 income tax return. That testimony convinces us that there are no grounds to override our oft-stated rule quoted above and delve into the circumstances leading up to the mailing of the statutory notices of deficiency. In any event petitioners' argument about the invalid statutory notice of deficiency applies only to the taxable year 1971. They make no such argument with respect to the taxable year 1972. The only real issue before the Court is substantiation of deductions. Petitioners in their opening brief did not request the Court to find a single fact with respect to the deductions they claimed on their income tax returns. Respondent, in his opening brief, requested 138 separately numbered findings of fact. Petitioners, in their reply brief, did not object to *477 any of respondent's requested findings. Under the circumstances of this case we hold that petitioners have abandoned their position that they have substantiated their deductions and they rely solely upon the invalidity of the statutory notice of deficiency for the taxable year 1971. Miami Valley Coated Paper Co. v. Commissioner,28 T.C. 492, 497 (1957); Theodore v. Commissioner,38 T.C. 1011, 1041 (1962). [3]
In holding that petitioners have abandoned their attempt to substantiate the deductions they claimed on their returns we are not unmindful of the fact that they appear pro se. Nevertheless, they are hardly unsophisticated or ignorant of the Court's rules. Mrs. Imhoff, although she was present at the trial, did not testify or make any statements for the record. Col. Imhoff proudly testified to his accomplishments as a member of General MacArthur's staff, as an inspector general in the Army who investigated *478 government contracts "involving billions of dollars." He testified that the Secretary of War personally requested him to write the "Armed Services Procurement Act" and the "General Services Procurement Act" which were enacted by Congress without a single dissenting vote.Petitioners have been to the Tax Court before. Imhoff v. Commissioner,T.C. Memo 1970-221. They were represented by counsel in that proceeding. During the course of the instant case we suggested that employment of counsel might be helpful to petitioners. We were met with an harangue by Col. Imhoff castigating his attorney, respondent's attorney and the trial judge who heard the case. Petitioners had no difficulty with the Court's Rules when they filed a motion for production of documents. Petitioners are sophisticated investors, holding a sizeable portfolio. Col. Imhoff testified at length about the research they conducted before making investments and the periodicals they subscribed to in order to be informed investors. We repeatedly admonished Col. Imhoff of his burden of proof. We made four trips to Philadelphia to accommodate petitioners in the presentation of their evidence and sat a total *479 of 3 full days and parts of 3 other days. We have 750 pages of transcript. Petitioners introduced 435 exhibits consisting primarily of receipts, sales slips and cancelled checks. We conclude that Col. Imhoff was fully aware of his responsibility to the Court to reply to respondent's requested findings of fact and in petitioners' opening brief to point out the evidence to support the deductions. Taking all the factors into consideration we conclude that the issues of substantiation have been abandoned and we decline to ferret out the evidence to support petitioners' deductions. [4]
We have examined respondent's briefs and find that the case law and other authorities cited support respondent's conclusions. If we held that petitioners had not abandoned the issues of substantiation we conclude from the entire record that the result would not be different. In most instances the amounts claimed at trial could not be tied in to the amounts claimed on the income tax returns, which is suspicious. Col. Imhoff consumed an inordinate amount of time rummaging *480 through countless scraps of paper, many of which had no notations. Some of the more glaring items which are obviously not deductible are commemorative dinner plates, Godiva chocolates, flowers for a deceased handyman, and a dental bill for a miniature poodle who was a part of the internal security system. Based upon our observation of Col. Imhoff we are convinced that he has not the foggiest idea where most of the disputed deductions come from. During the course of trial, respondent made certain concessions and the evidence developed that petitioners realized income not reported on their returns, and they had claimed deductions to which they were not entitled but were not disallowed in the statutory notices of deficiency. Respondent did not seek to amend his answers to seek deficiencies in excess of those determined in the statutory notices of deficiency. Accordingly, we sustain the Commissioner in full as to his determinations contained in the statutory notices of deficiency, less any concessions made by respondent, plus any additional income and additional unallowable deductions, the net result of which shall not exceed the deficiencies determined in the statutory notices *481 of deficiency. Decisions will be entered under Rule 155.
Footnotes
1. All Code section references are to the Internal Revenue Code of 1954, as amended.↩
2. "This Court has repeatedly held that it will generally not look behind the notice of deficiency to examine the evidence used or the propriety of respondent's motives or his administrative policy or procedure in making his determinations." Estate of Smith v. Commissioner,57 T.C. 650 (1972); Figueiredo v. Commissioner,54 T.C. 1508, 1513 (1970); Flynn v. Commissioner,40 T.C. 770, 772 (1963). "The underlying rationale for this rule is that a trial before the Tax Court is a proceeding denovo; our determination as to petitioner's tax liability must be based upon the merits of the case and not upon events preceding the trial of the case." Singleton v. Commissioner,T.C. Memo 1977-98↩, on appeal (3d Cir., Oct. 10, 1978).
3. Gowans v. Commissioner,T.C. Memo 1956-133, rev'd on other issues, 246 F.2d 448 (9th Cir. 1957); Rolland v. Commissioner,T.C. Memo 1959-161, affd. 285 F.2d 760↩ (5th Cir. 1961).
4. Cecere v. Commissioner,T.C. Memo 1975-371↩, affirmed in an unpublished opinion (3d Cir., Dec. 7, 1976).