JENS P. HOULBERG AND JANE HOULBERG, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Houlberg v. Commissioner
Docket No. 16766-82.
United States Tax Court
T.C. Memo 1985-497; 1985 Tax Ct. Memo LEXIS 136; 50 T.C.M. (CCH) 1125; T.C.M. (RIA) 85497; September 23, 1985. Ronald K. *137 Van Wert, for the petitioners. James M. Kamman, for the respondent. GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION GERBER, Judge: By statutory notice, respondent determined the following deficiencies in petitioners' Federal income tax: Year
Deficiency
1976
$7,443
1977
5,553
1978
3,276
1979
9,895
The issues for decision are (1) whether the period of limitations on assessment for 1976 and 1977 was extended by valid consents or had expired prior to issuance of the notice of deficiency, and (2) whether the notice of deficiency was issued by a person lacking proper authority and, therefore, was invalid. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and accompanying exhibits are so found and incorporated by this reference. Petitioners are husband and wife and resided in Los Angeles, California, when they filed their petition. They timely filed joint Federal income tax returns for 1976, 1977, 1978, and 1979. In November 1979, petitioners received a Form 872 (Consent to Extend the Time to Assess Tax) to extend the period of limitations on assessment for 1976 until September 30, 1981. The *138 form provided in part: "MAKING THIS CONSENT WILL NOT DEPRIVE THE TAXPAYER(S) OF ANY APPEAL RIGHTS TO WHICH THEY WOULD OTHERWISE BE ENTITLED." The form was accompanied by a cover letter from the Internal Revenue Service (IRS) notifying petitioners that the return of K. T. Associates, a partnership with which they were involved, was under examination. The letter in part stated: We do not expect to receive the results of the entity(s) audit before the expiration of the normal statute of limitations. Generally, a delay in time is the result of the taxpayers exercising their right to appeal the IRS decision. In order to allow time for adequate consideration of your case in conjunction with the audit of the entity(s), we request that you sign the enclosed consent * * *. After consulting with their accountant, Michael J. Ravin, petitioners signed the form and returned it to the IRS which accepted the consent. In May 1981, petitioners received a Form 872A (Special Consent to Extend the Time to Assess Tax), which in part provided that any tax due for 1976 could be assessed on or before the 90th day after the IRS mailed a notice of deficiency. The form and its accompanying cover letter *139 contained the same language regarding appeal rights as cited above. After consulting with Ravin, petitioners signed the form and returned it to the IRS which accepted the consent. In October 1980, a Form 872A was sent to petitioners for 1977. Ravin advised petitioners to sign the consent and prepared a letter to be used by them in forwarding the consent to the IRS. The letter, dated December 5, 1980, provided in part: Our signing this extension of time is expressly contingent upon the fact that we are not waiving any of our rights to the normal administrative procedures afforded to us by the Internal Revenue Service in connection with audit of our 1977 income tax return. The following language was added to the bottom of the last page of the Form 872A: "SUBJECT TO THE ATTACHED LETTER DATED Dec. 5, 1980." On receipt of the letter and conditional extension, an IRS representative called Ravin and advised him that the IRS would accept only an unmodified consent. Ravin then suggested to petitioners that they sign an unaltered consent, which they did. The signed Form 872A and the cover letter sent with respect to 1977 contained the language regarding appeal rights previously *140 cited. In October 1981, a Form 872A was sent to petitioners with respect to 1978. Petitioners refused to sign it. On April 15, 1982, petitioners were sent a notice of deficiency covering 1976, 1977, 1978, and 1979. The notice bore the District Director's name, and was initialed by Jerold M. Ching, a Quality Review Section Chief, Grade GS-13. Petitioners did not have a conference with the IRS prior to issuance of the notice of deficiency.Subsequent to issuance of the notice, an administrative hearing was held between counsel for petitioners and a representative of respondent's appeals division, at which time the parties agreed that the deficiencies for the taxable years at issue were as follows: Year
Deficiency
1976
$ 474
1977
5,553
1978
3,276
1979
0
TOTAL:
$9,303
The parties agree that, if this Court rules for respondent with respect to the validity of the consents and the notice of deficiency, the deficiencies are as above. OPINION Validity of Consents
Petitioners argue that the period of limitations on assessment for 1976 and 1977 expired prior to issuance of the notice of deficiency. They assert that they consented to extend the period *141 of limitations in return for administrative review and the opportunity to present their views before issuance of a statutory notice, and that the consents are invalid because this condition was not met.Respondent maintains that the period of limitations was extended by valid consents. We agree with respondent. Section 6501[1] states the general rule that a tax must be assessed within three years of the filing of a return. Section 6501(c)(4) permits the IRS and taxpayers to extend the period of limitations on assessment by written agreement. Since petitioners timely filed their tax returns for 1976 and 1977, the notice of deficiency, issued April 15, 1982, was barred unless the assessment period had been validly extended. Petitioners maintain that they received both oral and written assurances that they would receive a hearing prior to issuance of a deficiency notice. At trial, petitioner Jens Houlberg (Houlberg) testified that towards the end of 1979, he *142 was notified by mail that the IRS was conducting an audit of calendar years 1976 through 1979. Houlberg stated that he called Ravin, who told him that he would be afforded an opportunity to be heard before a notice of deficiency was issued. Houlberg further testified that other than his wife, Ravin, and counsel, he had not discussed the extensions with anyone. When asked the basis of his understanding, other than from his discussions with Ravin, that he would receive a pre-notice hearing, Houlberg described his experience with past audits. At no time did Houlberg testify that the IRS promised him a pre-notice hearing for the taxable years at issue. Ravin, petitioner's accountant, also testified at the hearing. He stated that after receiving a copy of the first extension request, he called the IRS representative whose name appeared on the accompanying cover letter. Ravin related: I asked him at that point in time * * * [if] signing of the consent would preclude the Service from sending a notice of deficiency prior to Mr. Houlberg or myself * * * expressing our position before and during the normal administrative review procedure. And he told me that this would in no way *143 preclude that. Ravin further related that he had spoken with another IRS representative regarding the requested extension for 1978. Ravin stated: [i] reiterated the taxpayers' position with appeal rights being confirmed, that this is no way would jeopardize their ability to go through the normal administrative appeals prior to the notice of deficiency being issued. Ravin continued that he had contacted still another IRS representative regarding the extension requested for 1977. He stated: [I] again reiterated the same position, with respect to the administrative appeal rights. She agreed with me. Ravin further testified that he was contacted by an IRS representative regarding the modified Form 872A petitioners had sent to the IRS. According to Ravin, the IRS representative-- said that they could not accept a conditional extension, and that they would be sending out a normal extension of time requesting Mr. Houlberg to sign it. And at that point in time, I asked, well, did they understand that they were not waiving their appeal rights. And they said they certainly did, and it was very evident in the letter that I had sent -- or Mr. Houlberg had sent. At no time *144 did Ravin testify that an IRS representative promised petitioners a hearing prior to issuance of a notice of deficiency. He essentially related that he was told that by signing the consents petitioners would not harm their appeal rights. The final witness at the hearing was Glenn Marker. During 1981, Marker was chief of a unit involved with solicitation of consents to extend the period of limitations on assessments. Marker testified that he did not recall having had any conversations with petitioners or Ravin. He stated that he had never indicated to a taxpayer or a taxpayer's representative that by extending the statute of limitations they would be guaranteed an appeals conference prior to issuance of a deficiency notice. Marker further testified as to what taxpayers were told would occur if a taxpayer chose to extend the statute: We would go on further to explain that if they chose to extend the statute, the case would then be retained in the Suspense Unit, awaiting the resolution of partnership adjustments, depend [sic] upon the outcome of the adjustments. If it was in the government's favor, we would try to solicit an agreement from the taxpayer, based upon the results *145 of the partnership audit. And if the taxpayers then chose not to, the case would be moved forward for issuance of the 30-day letter. The 30-day letter would then be issued, and they would have 30 days to file a protest to the government's position. And then, if they had not filed that letter, then it would go default to the 90-day section for against [sic] the issuance of the statutory notice of deficiency. Marker was subsequently asked if-- the process is the consent is signed, you finish up your audit, you then contact the taxpayer, the taxpayer is given an opportunity to settle it at that level, if he can't, then he is allowed to protest? He responded affirmatively. He stated that he knew of no cases in which a consent was signed and a notice issued before an appeals conference was allowed. Later, however, he stated that although it was normal procedure to issue a 30-day letter, there were instances where statutory notices went out without such letters being sent. He described these instances as-- cases where we have determined them [the cases] to be litigating vehicles, that they cannot be resolved at the appellate level * * *. The manager looks at the case and *146 makes a determination, and can actually recommend the issuance of a 90-day letter, because he doesn't feel that anything could be resolved at that level, the 30-day level. Marker's testimony does not demonstrate that respondent promised petitioners pre-notice of deficiency appeal rights in return for petitioners' consent to extend the period of limitations, as petitioners assert. On the contrary, Marker stated that no such promises are made to taxpayers. Marker indicated that although pre-notice conferences are commonly held, taxpayers are not always afforded such meetings. The waiver forms and accompanying cover letters similarly contain no explicit promise for a pre-notice conference. [2] Like the oral communications with IRS representatives that petitioners note, these written communications merely did not rule out the possibility of such a meeting. *147 The same contention petitioners make regarding the conditional nature of their consents was made previously by their accountant, Ravin, in his own case which was decided by this Court. Ravin v. Commissioner,T.C. Memo 1981-107, affd. without published opinion 755 F.2d 936 (9th Cir. 1985). In Ravin v. Commissioner,supra, we held that consents signed by Ravin were valid, even though an IRS agent had made, and a letter from the IRS contained, inaccurate statements concerning his appeal rights. With respect to the effect to be given statements of IRS agents to taxpayers, we stated: [t]he often stated general rule is that a revenue agent does not have the authority to bind the Commissioner. See United States v. Stewart,311 U.S. 60 (1940); Bornstein v. United States,170 Ct. Cl. 576, 345 F.2d 558 (1965); Wilkinson v. United States,157 Ct. Cl. 847, 304 F.2d 469 (1962). A claim of estoppel is usually rejected, although the taxpayer contends that he followed the erroneous advice of *148 an agent and acted in reliance upon it. Cf. Montgomery v. Commissioner,65 T.C. 511, 522 (1975); Boulez v. Commissioner,76 T.C. 209 (1981). [41 T.C.M. at 1064, 1066, 50 P-H Memo T.C. par. 81, 107 at 81-381] We further observed, with respect to the same language on the Forms 872 and 872A regarding appeal rights that we quote in this case, that-- [this language] does not state that any conferences will be automatically provided, but it merely states that by signing the Form 872 the taxpayer retains the same rights to an appellate conference prior to the issuance of the notice of deficiency as all other taxpayers. Put differently, it is nowhere indicated on the Form 872 that by signing it a taxpayer will improve his appeal rights. [41 T.C.M. at 1066, 50 P-H Memo T.C. at 382-81] In Ravin v. Commissioner,supra, we additionally pointed out that procedural rules with respect to administrative appeals are *149 merely directory, and compliance with them is not essential to the validity of a notice of deficiency. See also Luhring v. Glotzbach,304 F.2d 560, 563 (4th Cir. 1962); Rosenberg v. Commissioner,450 F.2d 529, 532 (10th Cir. 1971), affg. a Memorandum Opinion of this Court; Collins v. Commissioner,61 T.C. 693, 701 (1974); Flynn v. Commissioner,40 T.C. 770, 773 (1963). Accordingly, we find that the IRS did not violate its procedural rules by not conferring with petitioners prior to issuing a deficiency notice and, consequently, the requirements of section 6501(c)(4) have been met. Petitioners further suggest that the consents are ineffective because petitioners signed them under the mistaken belief that a pre-notice hearing would be held. [3] As is implicit in our opinion in Ravin v. Commissioner,supra,a consent is valid where no hearing is held, even though a taxpayer expects such review. We know of no *150 authority holding that a valid waiver of the period of limitations on assessment requires knowledge that a pre-notice administrative hearing may not be held. Petitioners note that they are not accountants. Petitioners were represented by an accountant (Ravin) and we are not persuaded that petitioners' backgrounds should dictate a different result than that reached in Ravin v. Commissioner,supra, with respect to the effectiveness of the waivers.
The Code imposes no general requirement on the IRS to confer with a taxpayer who has signed a waiver prior to issuing a notice of deficiency. For the reasons we have stated, we do not find that pre-notice administrative review was required in the specific circumstances of this case. Accordingly, we hold that the period for assessment for 1976 and 1977 was extended by valid consents. Authority to *151 Issue Deficiency Notice
Petitioners argue that Jerold M. Ching, the Quality Review Section Chief (Grade GS-13), who issued the deficiency notice, lacked properly delegated authority to do so, and that the notice therefore is invalid. Respondent maintains that Jerold M. Ching had the delegated authority to issue the notice. We agree with respondent. In Ravin v. Commissioner,supra, the taxpayers also argued that the IRS representative who issued the statutory notice did so without authority. The circumstances in which the statutory notice was issued are very similar in the two cases and, accordingly, Ravin v. Commissioner,supra, provides appropriate precedent for this case. In Ravin v. Commissioner,supra, we pointed out the authority by which certain IRS representatives could issue deficiency notices: Section 6212(a) provides that if the Secretary determines that there is an income tax deficiency, he is authorized to send a notice of deficiency to the taxpayer by certified mail or registered mail. The term "Secretary" *152 is defined in section 7701(a)(11)(B) as the "Secretary of the Treasury or his delegate." The phrase "or his delegate" is defined in section 7701(a)(12)(A)(i) as "any officer, employee, or agency of the Treasury Department duly authorized by the Secretary of the Treasury directly, or indirectly by one or more redelegations of authority, to perform the function mentioned or described in the context." Under the provisions of section 301.7701-9(b), Proced. & Admin. Regs., when a function is vested by statute in the Secretary of the Treasury or his delegate, and the Treasury regulations provide that such function may be performed by a district director, then the provision in the regulations constitutes a delegation by the Secretary to the district director of the authority to perform such function. Section 301.6212-1(a) [Proced. & Admin. Regs.] provides that if a district director determines that there is an income tax deficiency, he is authorized to notify the taxpayer of the deficiency. Thus, the authority to issue notices of deficiency has been delegated by the Secretary to district directors. *153 Under section 301.7701-9(c) [Proced. & Admin. Regs.] an officer authorized by regulations to perform a function has the authority to redelegate the performance of such function except to the extent that "such power to do so redelegate is prohibited or restricted by proper order or directive." On July 27, 1980, the Los Angeles District Director issued Delegation of Authority No. LA-41 (Rev. 9), which redelegated his authority to issue notices of deficiency to Section Chiefs, Quality Review Staff. Delegation Order LA-41 (Rev. 9) cites as authority Delegation Order No. 77 (Rev. 14), [4] which was issued by the Commissioner of Internal Revenue. On March 21, 1982, the Commissioner issued Delegation Order No. 77 (Rev. 15), [5] which superseded Delegation Order No. 77 (Rev. 14). Delegation Order No. 77 (Rev. 15) was in effect when the notice of deficiency was issued.[6] Since the authority of a District Director to delegate his authority to issue notices of deficiency is derived from sections 301.6212-1(a) and 301.7701-9, Proced. & Admin. Regs., the fact that Delegation Order LA-41 (Rev. 9) referred to Delegation Order 77 (Rev. 14), which had been superseded by Delegation Order 77 (Rev. *154 15) at the time the notice of deficiency was issued, is irrelevant to the validity of the notice. See Estate of Brimm v. Commissioner,70 T.C. 15, 19-22 (1978), and Ravin v. Commissioner,supra.In both Estate of Brimm v. Commissioner,supra, and Ravin v. Commissioner,supra, although the District Director's delegation order in effect at the time the deficiency notice was issued cited as authority a superseded revision of Delegation Order No. 77, we found no jurisdictional defect.
Delegation Order No. 77 (Rev. 15) specifically reaffirms the District Director's power to redelegate his function of issuing statutory notices of deficiency and in no way prohibits the delegations found in Delegation Order LA-41 (Rev. 9). To the extent that the citation of *155 Delegation Order No. 77 (Rev. 14) may constitute a defect in the chain of delegation of authority to issue notices of deficiency, the defect was extremely minor and did not prejudice petitioners' rights. See Estate of Brimm v. Commissioner,supra at 19-22; Perlmutter v. Commissioner,44 T.C. 382, 400 (1965), affd. 373 F.2d 45 (10th Cir. 1967); Ravin v. Commissioner,supra.
Accordingly, we hold that the delegation to Jerold M. Ching was proper, and that he had authority to issue the notice of deficiency. To reflect the foregoing, Decision will be entered for respondent.
Footnotes
1. All statutory reference are to the Internal Revenue Code of 1954, as amended and in effect for the taxable years at issue.↩
2. To the same effect are Rev. Proc. 79-22, 1979-1 C.B. 563, Rev. Proc. 57-6, 1957-1 C.B. 729, and IRS Publication 1035 (Extending the Tax Assessment Period), which petitioners cite. With respect to their citation to Publication 1035 as authority for their position, we point out to petitioners that the authoritative sources of Federal tax law are in the statutes, regulations, and judicial decisions and not in such informal publications. See Zimmerman v. Commissioner,71 T.C. 367, 371 (1978), affd. without published opinion 614 F.2d 1294↩ (2d Cir. 1979).
3. Petitioners were under no duress to sign the waivers. Compare Robertson v. Commissioner,T.C. Memo. 1973-205↩ (taxpayers, who had never previously dealt with the IRS, signed consents under threat of seizure of the their property and without the opportunity to consult with their attorney).
4. Delegation Order No. 77 (Rev. 14) is found at 1980-1 C.B. 573↩. 5. Delegation Order No. 77 (Rev. 15) is found at 1982-1 C.B. 335↩. 6. On April 19, 1982, Delegation Order LA-41 (Rev. 9) was superseded by Delegation Order LA-41 (Rev. 10), which cites Delegation Order 77 (Rev. 15) as authority for redelegation.↩